UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

THE CALEDONIAN-RECORD )
PUBLISHING CO., INC., )
SETH POWERS, and )
ARTHUR McGRATH )
 )
     -   Plaintiffs )
 ) CIVIL ACTION
    v. ) NO. 2:04-cv-21
 )
FRED CORNELL, ROBERT SHAW, )
KENNETH COPP, and THE )
VERMONT DEPARTMENT OF )
PUBLIC SAFETY )
 )
     -   Defendants )

## COMPLAINT

NOW COME the Plaintiffs, The Caledonian-Record Publishing Co. [hereinafter The Caledonian-Record], Seth Powers [hereinafter Powers], and Arthur McGrath [hereinafter McGrath], by and through their attorneys, WILSON & WHITE, P.C., and hereby assert as follows:

### JURISDICTION

1.    This case presents claims under the First, Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. §1983 and §1988. The jurisdiction of the United States District Court is invoked under this Court's federal question jurisdiction pursuant to 28 U.S.C. §1331, its jurisdiction to issue declaratory judgments pursuant to 28 U.S.C. §2201 and to issue preliminary and permanent injunctions pursuant to the Federal Rules of Civil Procedure Rule 65.

## THE PARTIES

**A.     Plaintiffs**

2.     The Caledonian-Record is a newspaper and electronic media, whose principal offices are located in St. Johnsbury, Vermont. It's circulation and news coverage extends primarily to Caledonia, Orleans, and Essex Counties in the State of Vermont and Grafton and Coos Counties in New Hampshire.

3.     Seth Powers is a news reporter, employed by the Caledonian-Record, and at all times material to this complaint was acting within the scope of his employment as a reporter for the Caledonian-Record. Powers resides in St. Johnsbury, Vermont.

4.     Arthur McGrath is a news reporter, employed by the Caledonian-Record, and at all times material to this complaint was acting within the scope of his employment as a reporter for the Caledonian-Record. McGrath resides in Guildhall, Vermont.

**B.     Defendants**

5.     Fred Cornell is a Sergeant, employed by the Vermont Department of Public Safety and its division known as the Vermont State Police [hereinafter The State Police] and is stationed in the barracks located in St. Johnsbury, Vermont. At all times material to this Complaint, Sgt. Cornell was acting within the scope of his employment as a law enforcement officer with the Vermont State Police and under color of law and the lawful power entrusted to him as a result of that employment.

6.     Robert Shaw is an elected Constable, employed by the Town of Lunenburg. At all times material to this Complaint, Shaw was acting within the scope of his employment as a law enforcement officer with the Town of Lunenburg and under color of law and the lawful

power entrusted to him as a result of that employment. Shaw resides on Benton Hill Road in the Town of Lunenburg, Vermont.

7. Kenneth Copp is an elected Constable, employed by the Town of Concord. At all times material to this Complaint, Copp was acting within the scope of his employment as a law enforcement officer with the Town of Concord and under color of law and the lawful power entrusted to him as a result of that employment. Copp resides on South Street in the Town of Concord, Vermont.

8. The Vermont Department of Public Safety, including its division, the Vermont State Police [hereinafter The State Police] is an agency of the State of Vermont charged with enforcement of the law in Vermont whose principal offices are located in Waterbury, Vermont.

## GENERAL ALLEGATIONS

9. On Monday, November 24, 2003, at approximately 11:00 a.m., an Essex County Deputy Sheriff, driving a department cruiser, was struck and killed by a truck while she was making a U-turn on Route 2 in Lunenburg. The accident occurred in the area known as Thurston's Flats or Lunenburg Flats, about 100 to 300 yards east of the junction of Lunenburg Town Highway 34 and Route 2.

10. Various law enforcement officers, including Cornell, Shaw, and Copp, responded to the scene of the accident.

11. Cornell was designated by The State Police as the officer in charge of the scene and of the investigation.

12. The resting spot of the vehicles involved in the accident blocked through traffic.

13. The area from which the public needed to be excluded to allow the police to conduct the investigation, to allow emergency rescue operations, and/or to protect the public was no more than 25 to 50 feet on either side of the point of collision.

14. Under Cornell's direction detours were established at at least four locations:

   a. in Lunenburg Village on Route 2 at a four-corner intersection about 2.2 miles west of the accident scene

   b. in Lancaster, N.H., just east of the Route 2 bridge crossing into Vermont, about two and a half miles east of the accident scene.

   c. in Guildhall on Route 2 about 50 yards west of the junction with Route 102 and about 2 miles east of the accident scene.

   d. In Lunenburg at the junction of Route 2 and the so-called River Road about a mile west of the accident scene.

15. Vehicles and members of the general public, not needing to travel through the accident scene but having a need to travel through the detours were allowed to do so.

16. Cornell issued directives to persons manning the detours that no press should be allowed past the detours.

**A.  Powers**

17. Powers attempted to get to the accident scene in order to photograph it. Powers had a camera with him which was visible. Powers encountered the detour in Lunenburg Village and asked one of the firemen manning the detour for permission to pass through. He was told that he should ask a deputy sheriff.

18. Powers was unable to locate a deputy sheriff.

19. When he couldn't locate a deputy sheriff, Powers returned to the fire truck.

LAW OFFICES OF
WILSON & WHITE, P.C.
P.O. BOX 159
MONTPELIER, VT 05601-0159

20. One of the firemen then told Powers he could not pass through the detour.

21. The fireman held up a portable radio so Powers could hear Cornell say, "I don't care what paper they are from, there is no press allowed."

22. Powers decided to disobey these instructions and began to run down Route 2, then into the woods, and then back on Route 2 and got to within 100 to 300 yards of the accident scene.

23. Shaw spotted Powers when he got back on Route 2. Shaw got into his vehicle, drove up to Powers, got out of his vehicle and said, "You've got three (3) seconds to turn around or I'm going to arrest you. You've already been told once by a fireman, now you'd better get out of here."

24. Powers then asked that Shaw talk with one of the troopers and explained that he only wanted to take a picture.

25. Shaw then said, "You've got three (3) seconds."

26. Powers then turned around and started walking away in an easterly direction.

27. Shaw then yelled, "You want to talk with a trooper? Come with me and I'll take you to the back of a trooper's cruiser. I came down here or else they would have and you know what they would have done."

28. Powers asked Shaw for his name. Shaw refused to give it.

29. Powers' attempts to get past the "detours" and get closer to the accident scene covered a period of approximately one-and-a-half hours starting around noon.

30. The actions of the Defendants, individually and collectively, prevented Powers from getting close enough to the accident scene to allow him to observe the circumstances of the accident, take a photograph, and/or gather other newsworthy information.

**B.    McGrath**

31.    McGrath also attempted to get to the accident scene in order to photograph it. He also had a camera with him, which was visible.

32.    At about noon, McGrath was first stopped at the detour on Route 2, just west of the junction with Route 102 and was not permitted to pass through.

33.    McGrath was allowed through the Lancaster, New Hampshire detour several times (traveling east and west) because he was a resident of Guildhall.

34.    He was again stopped by a firefighter with a portable radio at the detour near the junction of Routes 2 and 102 about 2 miles east of the accident.

35.    The firefighter was using his own personal pickup truck to redirect through traffic.

36.    McGrath asked permission to pass through the detour.

37.    The firefighter carried a walkie-talkie and called the police to see if McGrath should be allowed to pass. The response, received through the radio and then conveyed by the firefighter, was that no press were to be admitted.

38.    Upon information and belief, Cornell issued the order that no members of the press were to be allowed closer to the accident scene than these detours located one to two miles away from the accident scene.

39.    McGrath drove away and then drove up River Road to where it meets Route 2, about a mile from the accident scene. He persuaded the first person he met to let him through. He was told that a reporter from the Democrat had been turned back and that orders had been given that no press was to be admitted.

LAW OFFICES OF
VILSON & WHITE, P.C.
P.O. BOX 159
ONTPELIER, VT 05601-0159

40. McGrath then parked his vehicle in a small dirt lot, well off the road and started to get out of his vehicle.

41. Copp then approached McGrath and ordered him to turn around and leave.

42. Copp told McGrath his name and that he was the Constable for the Town of Concord.

43. McGrath informed Copp that he was a reporter, that he was intent on going to the accident scene, and that he couldn't be prevented from walking down the road as a pedestrian.

44. Copp then put his hand on his holstered and visible revolver and said, "I can stop you. It's an accident scene and we can prevent anyone we like from going there."

45. Copp's words and gestures intentionally conveyed to McGrath that if he attempted to proceed any further he would be physically prevented from doing so and that he would be arrested.

46. Facing Copp's threat of force and as the only means to avoid a physical confrontation, McGrath proceeded no further.

47. Subsequently, McGrath continued to seek permission to get past the "detours" and get closer to the accident scene until about 4:00 to 4:30 p.m.

48. The actions of the Defendants, individually and collectively, prevented McGrath from getting close enough to the accident scene to allow him to observe the circumstances of the accident, take a photograph, and/or gather other newsworthy information.

C. **Additional allegations**

49. Some members of the public, including but not limited to the Caledonian-Record route driver, were allowed to proceed past the detours described above and get closer to the accident scene than Plaintiffs.

LAW OFFICES OF
VILSON & WHITE, P.C.
P.O. BOX 159
ONTPELIER, VT 05601-0159

50. The actions of Defendants described above willfully, knowingly, and intentionally prevented Plaintiffs from observing the accident scene, taking photographs of the accident scene, and gathering other newsworthy information.

51. Upon information and belief, Defendants knew that a photograph of the accident scene would have conveyed that the Deputy Sheriff was negligent in the execution of the U-turn.

52. Upon information and belief, the Deputy Sheriff was on duty and acting in her official capacity as a Deputy Sheriff, at the time of the accident.

53. Plaintiffs and other reporters for the Caledonian-Record on all other occasions have routinely been allowed immediate and timely access to motor vehicle accident scenes by state and local law enforcement officers in Vermont sufficient to allow them to observe the accident scene, take photographs, and gather other newsworthy information.

54. The conduct of Defendants alleged herein was not necessary to protect the police investigation, to allow unimpaired emergency rescue operations, or to assure public safety.

55. Upon information and belief, the Defendants collectively and individually were motivated by a desire and an intent to protect "one of their own" and, in doing so, knowingly and intentionally deviated from their past practices related to accident scenes and disregarded the constitutional rights of the Plaintiffs.

**COUNT I: 42 U.S.C. §1983 – INDIVIDUAL DEFENDANTS**

56. Plaintiffs' incorporate by reference the allegations contained in Paragraphs 1 through 55.

57. Plaintiffs have a clearly established, constitutionally protected First and Fourteenth Amendment right to gather and publish newsworthy information, including but not limited to taking photographs at the scene of an accident on a public roadway, especially so

LAW OFFICES OF
WILSON & WHITE, P.C.
P.O. BOX 159
MONTPELIER, VT 05601-0159

when one of the drivers is a public official engaged in his or her official duties at the time of the accident.

58. Plaintiffs have a clearly established right to travel, which is constitutionally protected by the First and Fourteenth Amendments and a clearly established liberty interest, which is protected by the Due Process Clause of the Fourteenth Amendment.

59. Plaintiffs have a clearly established right to be free of unreasonable arrests, seizures, and/or threats of arrests or seizures, which is constitutionally protected by the Fourth and Fourteenth Amendments.

60. The restrictions on press access imposed by Defendants violated Plaintiffs' constitutionally protected newsgathering privilege and constituted an unconstitutional prior restraint of Plaintiffs' right to publish newsworthy information, constituting a violation of the First and Fourteenth Amendments of the United States Constitution

61. The restrictions on access to and travel along a public highway imposed by Defendants violated the First and Fourteenth Amendments of the United States Constitution.

62. The threat of arrest and restrictions on access to and travel along a public highway by Defendants constituted an unlawful and unconstitutional seizure and/or threat of seizure in violation of the Fourth and Fourteenth Amendments of the United States.

63. Defendants, collectively and individually, while acting under color of law, unlawfully prevented Plaintiffs from exercising their clearly established, constitutionally protected rights.

64. Defendants' actions, collectively and individually, constitute violations of 42 U.S.C. §1983.

LAW OFFICES OF
VILSON & WHITE, P.C.
P.O. BOX 159
ONTPELIER, VT 05601-0159

65. The actions of Cornell, Shaw, and Copp, collectively and individually, involved willful, reckless and/or callous indifference to the federally protected rights of Defendants.

### COUNT II: 42 U.S.C. §1983 – DEPARTMENT OF PUBLIC SAFETY

66. Plaintiffs' incorporate by reference the allegations contained in Paragraphs 1 through 65.

67. The Vermont State Police Rules & Regulations, Operational Policies & Procedures Section V, Chapter 2, Article 1, "Accident Investigation Policy" requires that any accident resulting in the death of any person "shall be investigated by a member having the rank of Trooper 1/c or above." It also requires that, "A member of the rank of Sergeant or above must physically go to the scene to supervise the investigation."

68. Pursuant to this Policy, Sgt. Cornell was delegated the supervisory authority over this accident scene and thereby empowered to make supervisory decisions on behalf of the Department and direct other law enforcement officers at the scene in the implementation and execution of his decisions.

69. The Accident Investigation Policy contains no standards or guidelines regarding the establishment of roadblocks or other barriers around the scene of an accident and the circumstances under which the press shall be admitted to and/or barred from an accident scene, leaving the final decision regarding roadblocks or other barriers and/or press access to the unfettered discretion of the supervising officer, in this case Sgt. Cornell.

70. The deficient policies and procedures were deliberately indifferent to the constitutional rights of the Plaintiff. The deficient policies directly caused injury to Plaintiff by giving Sgt. Cornell the unfettered discretion and authority to make final decisions regarding press access that violated Plaintiffs' constitutional rights.

71. Sgt. Cornell, being the State Police official responsible for establishing final policy with respect to the subject matter in question, made a deliberate choice to bar press access to the accident scene and follow this course of action from among various alternatives.

72. The Defendant State Police, while acting under color of state law, knew of, condoned, and approved the conduct of Sgt. Cornell as alleged in this Complaint.

COUNT III: 28 U.S.C. 2201 and F.R.Civ.R. 65

73. Plaintiffs' incorporate by reference the allegations contained in Paragraphs 1 through 72.

74. The foregoing allegations constitute an actual controversy within this Court's jurisdiction.

75. Plaintiffs' injury cannot be wholly remedied absent a declaration of their rights by this Court.

76. Issuance of a declaratory judgment will result in a just, expeditious, and economical determination of the controversy.

77. Issuance of injunctive relief is appropriate and necessary to assure the protection of Plaintiffs' rights in the future.

LAW OFFICES OF
VILSON & WHITE, P.C.
P.O. BOX 159
ONTPELIER, VT 05601-0159

WHEREFORE, Plaintiffs pray that this Honorable Court shall:

1. Award Plaintiffs Compensatory and/or Nominal Damages.

2. Award Plaintiffs Punitive Damages in the amount of $500 against each individually named defendant.

3. Issue an order declaring that the actions of Defendants barring the Plaintiffs from the accident scene and preventing Plaintiffs from taking and publishing photographs and gathering other newsworthy information was wholly unnecessary to protect the police investigation, to allow unimpaired emergency rescue operations, or to assure public safety and thereby breached the rights secured to Plaintiffs by the First, Fourth, and Fourteenth Amendments of the United States Constitution in violation of 42 U.S.C. §1983.

4. Issue injunctive relief prohibiting Defendants from further, similar violations of the First, Fourth, and Fourteenth Amendments of the United States Constitution.

5. Award Plaintiffs their attorney's fees, expenses, and costs under 42 U.S.C. §1988.

6. Award such other relief as is just and reasonable.

DATED at Montpelier, Vermont this 26th day of January, 2004.

Respectfully submitted,

by: _____
Philip H. White, Esq.
WILSON & WHITE, P.C.
P.O. Box 159
Montpelier, VT 05601
Tel: 802-229-1900
Fax: 802-229-9839

Attorney for Plaintiffs